JOHN RESUDEK, Plaintiff-Appellant, v. CARMEN SBERNA, Defendant-Appellee.

Second District   No. 84—263

Opinion filed April 26, 1985.

Gene L. Armstrong, of Cichocki & Armstrong, Ltd., of Oak Park, for appellant.

John P. McGahey & Michael D. Johnson, both of Garbutt & Jacobson, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, John Resudek, appeals from the trial court's order granting a motion for summary judgment brought by defendant, Carmen Sberna. Plaintiff, who was formerly an insurance underwriter for Kemper Insurance Company (Kemper), filed this action for slander and tortious inference with contract against defendant, who was engaged in the insurance agency/brokerage business, for a statement

made by defendant to another Kemper employee that he, defendant, was "tired of paying for business." Following this statement, Kemper conducted a review of plaintiff's underwriting decisions and, although no evidence of improper decisions was found, plaintiff was terminated because he had accepted gifts in violation of company policy.

The issue raised on appeal by plaintiff is whether there were genuine issues of material fact relating to both his actions for slander and tortious interference with contract which make the granting of summary judgment improper.

Plaintiff's complaint, as later amended, was in two counts alleging causes of action for "defamation/slander" in count I, and for "interference with contractual relations and/or prospective business advantages," in count II. Essentially, the allegations of the complaint stated that on December 1, 1981, in a telephone conversation with James Flavin, regional director of agencies for Kemper, defendant, who was engaged in the insurance agency/brokerage business, stated, *inter alia*, "I'm tired of paying for business," and told Flavin he had been paying for lunches, and had bought plaintiff gifts of a stereo, a shirt, and ties. Plaintiff alleged the accusations were false and defamatory, and resulted in the loss of his job as an underwriter with Kemper.

Defendant filed a motion for summary judgment attaching a memorandum of law and fact which contained excerpts from various depositions of Kemper employees, a copy of the Kemper policy on gifts, and correspondence from plaintiff to a Kemper supervisor concerning the gifts from defendant. The full depositions of the four Kemper employees were subsequently filed. In his memorandum, defendant sought summary judgment on the slander count on the basis of the defenses of truth, the innocent construction rule, and the rule of conditional privilege, and on the tortious interference with contract count on the basis of plaintiff's failure "to show any of the four essential elements necessary to sustain such a cause of action." Plaintiff filed a memorandum in opposition to defendant's motion for summary judgment wherein plaintiff basically argued against the legal theories advanced by defendant for summary judgment and further contended that there were genuine issues of material fact which precluded the granting of summary judgment.

In relevant part, the deposition of James Flavin, regional director of agencies for Kemper, revealed that it was his responsibility to work with and maintain relationships with agents and brokers who offer insurance issued by Kemper; that defendant was one of his gen-

eral agents; that a problem arose with respect to the authenticity of signatures of two proposed insureds on applications submitted by defendant; that he spoke by telephone with defendant about the signatures and was told by defendant they were authentic; that during the conversation, defendant brought up plaintiff's name and said "he was tired of paying for business"; that Flavin responded, "Do you understand exactly what you're telling me?" and defendant said "I know what I'm telling you"; that Flavin said he would have to go to a higher authority, and defendant said "he didn't care, he was tired of paying for business"; that defendant further said he had been paying for lunches, mentioned a stereo, a shirt and ties, and didn't care where it went from there; and that he, Flavin, assumed all these statements were made about plaintiff. Flavin reported the conversation to his supervisor, and other Kemper employees took over responsibility for resolution of the matter.

In summary, the depositions of three other Kemper employees reveal that as a result of Flavin's reporting of the conversation with defendant, an audit of plaintiff's work with defendant was undertaken, no evidence of improper decisions made by plaintiff, who was the only underwriter for defendant's business, was discovered; plaintiff was requested to provide information about gifts he may have received from defendant, and plaintiff admitted receiving a Sony Betamax tape player, a shirt and ties, and numerous lunches, all paid for by defendant. The depositions further indicate that following the audit, the matter was turned over to the corporate personnel department with the recommendation to terminate plaintiff, and the decision to terminate plaintiff was ultimately made by the personnel department. None of the four depositions on file in this cause are from employees of the personnel department. The understanding of the Kemper employees, whose depositions are contained in the record, is that plaintiff was terminated for the acceptance of gifts in violation of company policy. Also, the fact that an accusation of paying an underwriter for business was made and the fact that plaintiff accepted gifts contrary to company policy created a problem such that plaintiff could not continue to make decisions in the best interests of the company.

The motion for summary judgment was granted by Judge McQueen in a written order without further findings. Plaintiff filed a motion for rehearing, which was denied by Judge Geiger, who had been assigned the case following Judge McQueen's retirement.

■■ Before proceeding to our analysis of plaintiff's contentions on appeal, we must consider initially defendant's motion to dismiss the

appeal for lack of jurisdiction. Defendant maintains that Judge McQueen's written order granting his motion for summary judgment does not by its terms expressly enter judgment for any party and therefore cannot be considered to be a judgment. Although there is dated authority that an order granting a motion for summary judgment is not a judgment but merely a ruling that the party is entitled to a judgment (*Dowling v. Jensen* (1960), 28 Ill. App. 2d 174, 171 N.E.2d 107), more recent and authoritative decisions hold that the finality of an order is not necessarily determined by its form (*Wilkey v. Illinois Racing Board* (1983), 96 Ill. 2d 245, 249, 449 N.E.2d 843; *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 204, 347 N.E.2d 286), and a final judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 112, 435 N.E.2d 480). The written order here granted defendant's motion for summary judgment, and there is nothing in the record to otherwise indicate anything but a final judgment for defendant. Defendant's motion to dismiss the appeal is denied.

It is plaintiff's position that the trial court improperly granted summary judgment for defendant. He argues that there are genuine issues of material fact presented in the record which preclude summary judgment. It is well settled that a reviewing court must reverse an order granting summary judgment if it is determined that a material question of fact does exist. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) Because summary judgment is such a drastic method of disposing of a case, it should not be employed unless the right of the moving party is free from doubt, and the affidavits and depositions are to be construed against the moving party. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 464, 430 N.E.2d 1079.

We first address the slander count. In Illinois, under the common law, four classes of words, if falsely communicated, give rise to a cause of action for defamation without a showing of special damages. This is called slander or libel *per se*. They are:

" '1. Those imputing the commission of a criminal offense;

2. Those imputing infection with a communicable disease of any kind which, if true, would tend to exclude one from society;

3. Those imputing inability to perform or want of integrity in the discharge of duties of office or employment;

4. Those prejudicing a particular party in his profession or

trade.' " (*Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27, 457 N.E.2d 392.)

"An Act to revise the law in relation to slander and libel" (Ill. Rev. Stat. 1977, ch. 126, par. 1 *et seq.*) enlarged the classifications enumerated above by providing that false accusations of fornication, adultery and false swearing are actionable as a matter of law. Only two of the common law categories are relevant here—words imputing inability to perform or want of integrity in the discharge of duties of office or employment and those prejudicing a party in his profession or trade.

The preliminary determination of whether a statement is slanderous *per se* is one of law. (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 256, 458 N.E.2d 115.) In making that determination, courts also apply the innocent-construction rule as set forth in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195:

"[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." 92 Ill. 2d 344, 352, 442 N.E.2d 195.

There were no findings or reasons given by the court below for granting defendant's motion for summary judgment. On appeal, defendant contends the statement alleged to be slanderous is not slanderous *per se*, is subject to an innocent construction, and further argues that plaintiff has failed to make a showing of malice or damages. Plaintiff maintains that the statement was slander *per se*, not subject to an innocent construction, and that malice and damages are presumed for statements which are slanderous *per se*. Alternatively, plaintiff contends the statement constitutes slander *per quod*, which we need not reach in view of our analysis below.

■ We believe as a preliminary determination as a matter of law defendant's statement is slanderous *per se*, and when taken in context with the words and implications therefrom, cannot reasonably be innocently interpreted. The statement made by defendant about plaintiff imputes both a lack of integrity and tends to prejudice him

in his business as an insurance underwriter. Defendant's statement that he was "tired of paying for business" made to another Kemper employee about plaintiff, who made underwriting decisions on applications for insurance submitted by defendant, reasonably can be interpreted as impugning plaintiff's integrity as it relates to underwriting decisions. It implies plaintiff's decisions are affected by payments, such as gifts, which further implies a lack of loyalty to Kemper and a willingness to make decisions which are influenced by payment of money or gifts. Certainly, Flavin, to whom the statement was made, and other Kemper employees who conducted an audit of plaintiff's files, felt the remark in question reflected adversely upon plaintiff's character and job performance to warrant an immediate investigation. We, therefore, do not believe that as a matter of law it is reasonable to construe defendant's statement innocently, given the context in which it was said, and its natural and obvious interpretation. See *Crinkley v. Dow Jones & Co.* (1983), 119 Ill. App. 3d 147, 151-52, 456 N.E.2d 138; *Savage v. Seed* (1980), 81 Ill. App. 3d 744, 751-52, 401 N.E.2d 984.

■ Although defendant maintains that damages were not sustained by plaintiff due to the fact he was terminated for a violation of a Kemper policy against acceptance of gifts rather than for his statement, and that malice is not supported by the record, malice and damages are presumed if a statement is slanderous *per se.* (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 256, 458 N.E.2d 115.) At this stage of the proceedings, we are satisfied that there is a genuine issue of fact as to defendant's malice, and any damages which proximately result must be determined by the trier of fact and may be awarded for slander whether or not plaintiff's actual termination was caused by the defendant's statement. The trial court improperly granted summary judgment for defendant on the slander count, and that decision is reversed.

■ Count II of plaintiff's complaint, labeled "interference with contractual relations and/or prospective business advantages," alleged, in pertinent part, defendant's slanderous statement to a Kemper employee, Flavin, resulted in the loss of his job at Kemper and the "loss of the prospective economic advantages he enjoyed at Kemper." The trial court also did not provide findings or reasons for granting defendant summary judgment on this count. Defendant argues on appeal that summary judgment was justified because plaintiff failed to show malice and failed to prove that the statement of defendant triggered the actual breach of the contract. Defendant also

advances an argument that as plaintiff was an employee "at will" and can be terminated without cause by Kemper, defendant cannot have interfered in this type of a relationship. This latter issue was not raised below, and the facts do not reveal the nature of the plaintiff's employment contract with Kemper. Thus, the point cannot be raised and considered for the first time on appeal. (See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) Besides, the contention appears to be meritless, for the tort of interference with a contract has been held to apply to "at will" employment contracts. *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 529-30, 444 N.E.2d 579; *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 124, 435 N.E.2d 827.

■ As stated in *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 258, 458 N.E.2d 115,

> "The elements of tortious interference with existing contracts are: the existence of a valid contract; defendant's knowledge of the contract; the intentional and malicious inducement of the breach; a subsequent breach; and damages resulting from the breach. (*National Educational Advertising Services, Inc. v. Cass Student Advertising, Inc.* (N.D. Ill. 1977), 454 F. Supp. 71; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.) To establish a claim for tortious interference with a prospective contractual relationship, plaintiff must have a reasonable expectation of entering into a valid business relationship, defendant must know of the expectancy and intentionally and maliciously interfere to defeat the expectancy, and plaintiff must be injured. (*American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297; *Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 385 N.E.2d 714.) There must be a showing of malice." (See also *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234-35, 440 N.E.2d 376.)

The torts of interference with contract and interference with a prospective business or contractual relationship are two distinct causes of action. *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 258, 458 N.E.2d 115; see generally Broida & Haudler, *Tortious Interference with Contract and Prospective Advantage in Illinois*, 32 DePaul L. Rev. 325 (1983).

■ We note, first, that plaintiff in his initial brief has failed to argue the propriety of the summary judgment order as it relates to

any claimed tort of interference with a prospective business advantage. An argument not raised in the initial brief is deemed waived for purposes of review even if discussed in the reply brief. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 393, 469 N.E.2d 1085; *Will v. Will Products, Inc.* (1982), 109 Ill. App. 3d 778, 785, 441 N.E.2d 343.) Even if we were to ignore the waiver doctrine, the pleadings do not allege a theory of interference with a prospective business advantage with any identifiable third party. (See *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 162, 466 N.E.2d 1137.) The interference alleged in count II is with the existing and continuing contractual relationship with Kemper which, we believe, constitutes under the circumstances here only the tort of interference with contract, not the separate tort of interference with a prospective contract or business relationship. See Restatement (Second) of Torts sec. 766B, comment a (1979).

However, we also conclude that the trial court should not have granted defendant's motion for summary judgment as it pertains to the tort of interference with plaintiff's contract with Kemper. Genuine issues of material fact exist as to the elements necessary to prove that tort. Whether there was an intentional and malicious inducement of the breach by defendant is clearly a question of fact. The depositions and other materials filed by defendant do not in any way present evidence of defendant's intent which would rebut the inference of malice and intent to breach the contract from the statement made by defendant about plaintiff to Flavin. Defendant's deposition is not contained in the record, nor was it submitted to the trial court in support of the motion for summary judgment. Whether defendant's statement proximately caused the termination of plaintiff's contract of employment with Kemper is also a question of fact. (See *Doremus v. Hennessy* (1898), 176 Ill. 608, 617, 52 N.E. 924; Prosser, Torts sec. 129, at 935 (4th ed. 1971).) The trial court, therefore, improperly granted summary judgment for defendant on that portion of count II of plaintiff's complaint alleging interference with contract.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

SCHNAKE and HOPF, JJ., concur.